1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

CHERYL F. SMITH,

     Plaintiff,

v.

FJM CORPORATION, d.b.a. REALTY
EXECUTIVES OF NEVADA

     Defendant.

Case No. 2:07-CV-1417-KJD-GWF

**ORDER**

     Currently before the Court is Defendant FJM Corporation's (hereinafter "Realty Executives") Motion for Summary Judgment (#21), filed July 29, 2008.  Plaintiff filed a Response (#24) on September 2, 2008, to which Defendant filed a Reply (#26) on October 3, 2008.

**I. Background**

     Plaintiff Cheryl Smith ("Smith") worked for Realty Executives as its Corporate Broker from March 2, 2002, until her termination on January 15, 2007.  She was 53 years-old at the time she was hired.  According to Realty Executives, Smith was fired because she violated the terms of her employment agreement by competing with the agents in her office by listing and selling properties.  According to Defendant, Smith's employment agreement prohibited her from listing and selling properties during her employment as its Corporate Broker.  Smith avers that her employment

1   agreement is ambiguous as to her right to list and sell properties, and claims that she was fired as a

2   result of age and gender discrimination.  Specifically, Smith alleges that she was fired as part of

3   Defendant's plan to create a more youthful image at the brokerage.

4          Smith filed a Complaint in state court on October 4, 2007, alleging seven claims for relief for

5   (1) breach of contract; (2) failure to pay commissions; (3) penalties for failure to pay commissions

6   pursuant to NRS §§ 608.020 and 608.040; (4) declaratory judgment; (5) gender discrimination and

7   retaliation in violation of Title VII of the Civil Rights act of 1964 (Title VII); (6) age discrimination

8   and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), and; (7) a

9   claim for attorney's fees pursuant to Title VII and the ADEA.

10         Here, Defendant seeks that the Court grant summary judgment on its behalf under various

11  theories.  Particularly, Defendant avers that Smith's claims are without merit, as Smith openly

12  breached the terms of her employment agreement, received all of the commissions to which she was

13  entitled, failed to exhaust her administrative remedies on her retaliation claims, can provide no

14  evidence of gender discrimination, and cannot establish a claim for age discrimination.

15  **II.  Standard for Summary Judgment**

16          Summary judgment may be granted if the pleadings, depositions, answers to interrogatories,

17  and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

18  material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ.

19  P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the

20  initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at

21  323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a

22  genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

23  587 (1986); Fed. R. Civ. P. 56(e).

24          All justifiable inferences must be viewed in the light most favorable to the nonmoving party.

25  See Matsushita, 475 U.S. at 587.  However, the non-moving party may not rest upon the mere

26  allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit

1    or other evidentiary materials provided by Rule 56(e), showing there is a genuine issue for trial.  See

2    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual

3    issues of controversy in favor of the non-moving party where the facts specifically averred by that

4    party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n., 497

5    U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345

6    (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine

7    issue of fact to defeat summary judgment).  "[U]ncorroborated and self-serving testimony," without

8    more, will not create a "genuine issue" of material fact precluding summary judgment.  Villiarimo v.

9    Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

10           Summary judgment shall be entered "against a party who fails to make a showing sufficient

11   to establish the existence of an element essential to that party's case, and on which that party will

12   bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Summary judgment shall not be granted

13   if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

14   **III. Analysis**

15           **A. Breach of Contract**

16           Plaintiff's first claim for relief alleges that Realty Executives breached the terms of her

17   employment contract by failing to give her ninety (90) days written notice of its intent to terminate

18   her employment.  Defendant argues that Smith's breach of contract claim fails because it was not

19   required to give notice under the circumstances of Plaintiff's termination.

20           The employment agreement provides that ninety (90) days written notice is required to

21   terminate the contract.  Additionally however, the contract also provides that, "[i]n the event of any

22   violation . . . of any of the terms of [the] agreement . . . [Realty Executives] may terminate

23   employment without notice . . ." (Def.'s Mot. for Summ. J. Ex. E p. 4.)

24           Realty Executives claims that it was not obligated to give Smith ninety (90) days notice of her

25   termination because she violated the employment agreement when she began listing and selling

26   properties.  Specifically, Defendant argues that Smith violated Section Six of the employment

3

1  agreement, which required her to "devote all of her time, attention, knowledge, and skills solely to

2  the business and interest of Employer, and Employer shall be entitled to all of the benefits, profits, or

3  other issues arising from or incident to all work, services, and advice of Employee, . . ." (Id. at 3.)

4       Smith, in opposition, argues that Section Six of the employment agreement does not prohibit

5  her from listing and selling property, and is ambiguous at best.  The Court agrees.

6       Summary judgment is appropriate for breach of contract claims only if the contract provision

7  or the contract in question is unambiguous.  A contract or a provision of a contract is ambiguous if it

8  is reasonably susceptible to more than one interpretation.  Castaneda v. Dura-Vent Corp., 648 F.2d

9  612, 619 (9th Cir.1981).  "The question of the interpretation of a contract when the facts are not in

10 dispute is a question of law," to be decided by the court.  Shelton v. Shelton, 78 P.3d 507, 510 (D.

11 Nev. 2003).   If however, the court finds that a contract's terms "are reasonably susceptible to more

12 than one interpretation, extrinsic evidence is admissible to determine the parties' true intent.  Red

13 Rock Communications, Inc. v. American Telecasting, Inc., 2006 WL 254195 at *5 (D. Nev. 2006).

14 Determining the parties' true intent or the circumstances that may elucidate ambiguous language may

15 require fact finding by the trier of fact.  Id.  More specifically, "when interpreting a contract, 'a court

16 may consider surrounding circumstances, including negotiation, prior understandings, and

17 subsequent conduct[ .]'" Id. (quoting Taylor v. State Farm Mut. Auto. Ins. Co., 854 P.2d 1134, 1139

18 (Ariz.1993)).  If the court's inquiry into the parties' actual meaning of the contract does not resolve

19 the issue, the intent of the parties in light of the competing interpretations of an ambiguous contract

20 is a factual issue to be resolved by the jury.  See Economy Forms Corp. v. Law Co., Inc., 593 F.Supp.

21 539 (D.C. Nev. 1984.);  United States, Etc. v. Haas & Haynie Corp., 577 F.2d 568, 573 (9th Cir.

22 1978).  Therefore, summary judgment is improper, where differing views of the parties' intent raise a

23 genuine issue of fact.  U.S. v. Sacramento Municipal Utility Dist., 652 F.2d 1341, 1344 (9th

24 Cir.1981).

25       Here, the Court finds the provisions of Plaintiff's employment contract to be ambiguous.

26 Specifically, the Court finds that Section Six is reasonably susceptible to more than one

1    interpretation. An examination of the evidence does not resolve the ambiguity of the parties' intent

2    regarding whether or not the contract prohibited Plaintiff from listing and selling properties during

3    the course of her employment.

4         Accordingly, the Court finds that the interpretation of the parties' intent upon entering the

5    contract is a factual issue to be decided by a jury, thus barring summary judgment.  Accordingly,

6    Defendant's Motion for Summary Judgment as to Plaintiff's breach of contract claim is denied.

7                    **B. Failure to Pay Commissions and Penalties for Failure to Pay Commissions**

8         Plaintiff's second claim for relief alleges that Realty Executives failed to pay her

9    commissions she earned during the course of her employment.  Specifically, Plaintiff argues that

10   Realty Executives owes her $5,660 as a seller's agent, for a commission on a property located at

11   10765 Avenzo, in Las Vegas, that closed shortly after her termination.  Defendant's Motion for

12   Summary Judgment relies upon its allegation that Plaintiff breached the employment contract,

13   averring that Realty Executives does not owe Plaintiff the commission under the contract, as the sale

14   was not closed until after the date of her termination.

15        Specifically, Section Eight(B) of the employment contract states that in the event of a

16   contractual violation, the employer "may terminate [Smith's] employment without notice, and with

17   compensation . . . only to the date of such termination."  (Def.'s Mot. for Summ. J. Ex. E at 4.)  Here,

18   Defendant argues it is not obligated to pay Smith the commission she seeks in her second cause of

19   action, because she violated the employment contract by listing and selling property during the

20   course of her employment, and because the sale for which she is seeking commission, closed after

21   her termination.

22        Specifically, the property upon which Plaintiff seeks commission payment, closed 18 days

23   after Plaintiff's termination. (See Def.'s Mot. for Summary Judg. Ex L at CS 21.)   Plaintiff's second

24   cause of action therefore, hinges upon the determination of whether or not Plaintiff's behavior

25   violated the terms of her employment contract.  If it is determined that Plaintiff's behavior violated

26   the terms of her employment contract, then Defendant most likely will not be found to have breached

1  the contract by failing to give Smith's ninety (90) days notice of termination.  If however, it is

2  determined that Defendant's behavior was not a violation of the terms of Smith's employment

3  contract, then it is highly probable that Defendant will be found to have breached the employment

4  agreement by failing to give plaintiff ninety (90) days notice of her termination.  Under these

5  circumstances, should it be determined that Defendant breached the employment agreement and

6  should have given Plaintiff ninety (90) days notice of termination, her termination date would have

7  fallen on or near April 15, 2007, which was after the date of closing for the 10765 Avenzo, Las

8  Vegas property for which she claims the closing transaction commission.  Thus Plaintiff may

9  potentially have a right to her commission payment on the sale.  (Id.)

10  Accordingly, the Court finds that resolution of Plaintiff's breach of contract claim bars

11  summary judgment on Plaintiff's second and third claims for relief.

12  **C. Declaratory Judgment**

13  Plaintiff admits that her fourth claim for relief, for declaratory Judgment, is moot and

14  requests that it be dismissed.  Accordingly, the Court hereby dismisses Plaintiff's declaratory

15  judgment claim.

16  **D. Failure to Exhaust Administrative Remedies**

17  Plaintiff's fifth and sixth claims for relief, for gender and age discrimination, respectively,

18  allege retaliation under both Title VII and the ADEA.  Here, Defendant seeks that the Court grant

19  summary judgment on Plaintiff's retaliation claims for failure to exhaust administrative remedies.

20  Specifically, Defendant alleges that Plaintiff failed to assert her retaliation claims in her Equal

21  Employment Opportunities ("EEOC") Charge, and that Plaintiff failed to assert allegations of

22  retaliation in her intake documents submitted to the EEOC.  (Def.'s Mot. for Summ. J. at 16.)

23  Exhaustion of administrative remedies through the EEOC is an essential condition of the

24  Title VII and ADEA statutory schemes, and therefore is mandatory as a precondition to bringing such

25  claims in federal court.  See Brown v. Puget Sound Elec. Apprenticeship & Training Trust, 732 F.2d

26  726, 729 (9th Cir. 1984); See also, Legnani v. Aitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683,

1    686 (2d Cir. 2001).  "Title VII places primary responsibility for disposing of employment

2    discrimination complaints with the EEOC in order to encourage informal conciliation of employment

3    discrimination claims and foster voluntary compliance with Title VII."  Id. at 729 (citing Ong v.

4    Cleland, 642 F.2d 316, 319 (9th Cir.1981).  "[I]ncidents of discrimination not included in an EEOC

5    charge may not be considered by a federal court unless the new claims are 'like or reasonably related

6    to the allegations contained in the EEOC charge."  Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir.

7    1990).  Additionally, "in determining whether an allegation under Title VII is like or reasonably

8    related to allegations contained in a previous EEOC charge, the court inquires whether the original

9    EEOC investigation would have encompassed the additional charges."  Green v. Los Angeles County

10   Superintendent of Schools, 883 F.2d 1472 (9th Cir. 1989) (citing Kaplan v. International Alliance of

11   Theatrical and Stage Employees and Motion Picture Machine Operators, 525 F.2d 1354, 1359 n. 3

12   (9th Cir.1975).  It is required therefore, that plaintiffs bringing claims under Title VII must exhaust

13   their administrative remedies before seeking judicial relief from discriminatory action.  Brown v.

14   Puget Sound Elec. Apprenticeship & Training trust, 732 F.2d at 729.

15           In her Complaint before this Court, Plaintiff has asserted claims for retaliation under Title

16   VII, and the ADEA.  In her EEOC Intake Questionnaire however, Smith only made claims for age

17   and gender discrimination, and failed to indicate or assert any allegation of retaliation.  Likewise, in

18   her EEOC Charge of Discrimination, Plaintiff made claims for age and gender discrimination, but

19   failed to assert a claim for retaliation.  (Def.'s Mot. for Summ. J. Ex. R.)  On August, 12, 2007, after

20   conducting an investigation into Plaintiff's allegations, the EEOC sent Smith a Dismissal and Notice

21   of Rights Letter advising Smith that her charge had been dismissed because the EEOC was unable to

22   conclude that discriminatory acts occurred.  (Smith Depo. at 201:8 –202:1; Def.'s Mot. to Dismiss

23   Ex. S.)  The letter advised Plaintiff that she could bring suit in either federal or state court on her

24   claims, if she desired, so long as she filed within ninety (90) days.  Plaintiff timely filed her

25   Complaint in this Court on October 4, 2007.

26

1    Though Plaintiff's EEOC Charge must be construed liberally, (see Sousa v. Hiraoka 920 F.2d

2  at 1456), the Court finds that Plaintiff's claims for retaliation cannot reasonably be expected to grow

3  out of her discrimination claims.  This case is distinguishable from Sousa v. Hiraoka, where the

4  Ninth Circuit found that allegations not asserted in the petitioner's EEOC charge were sufficiently

5  related to the claims that had been asserted, because they were of the same nature and could be

6  "expected to grow out of the charge of discrimination."  920 F.2d 1451.  Here however, Plaintiff

7  filed her Charge with the EEOC after her termination, and therefore her claim for retaliation cannot

8  be sufficiently related to her filing of a charge of discrimination.  See Schiappa, Sr. v. Brookhaven

9  Science Associates, LLC, 403 F. Supp.2d 230, 235 (E.D.N.Y. 2005) (Plaintiff's retaliation claim

10  could not be "based upon or reasonably related to" his EEOC charge alleging discrimination because

11  the charge was filed after his termination, and "alleged retaliation must occur after the filing of the

12  charge").

13    Additionally, Plaintiff failed to respond to Defendant's Motion for Summary Judgment

14  seeking that her claims for retaliation under Title VII and the ADEA be dismissed for failure to

15  exhaust administrative remedies.  According to Local Rule 7-2(d), the Court may consider failure to

16  file points and authorities in opposition as consent to the granting of the motion.

17    Accordingly, the Court finds that it cannot exercise jurisdiction over Plaintiff's claims for

18  retaliation because Plaintiff failed to bring such claims in her EEOC charge.  Plaintiff has failed to

19  exhaust her administrative remedies in regard to her claims for retaliation under Title VII and the

20  ADEA.  Additionally, by failing to respond to Defendant's Motion regarding retaliation, Plaintiff

21  concedes Defendant's argument.

22    **E. Gender Discrimination**

23    Plaintiff's fifth cause of action alleges gender discrimination under Title VII.  Defendant

24  claims that Smith's gender discrimination claim fails for several reasons.  Specifically, Defendant

25  avers that Plaintiff failed to bring her action for pay disparity within the 300 day time bar under 42

26  U.S.C. § 2000e-5(e)(1).  Additionally, Defendant asserts that Smith cannot prove a *prima facie* case

1   for disparate treatment under Title VII, and even if she did prove a *prima facie* case, she cannot

2   demonstrate that Realty Executives' alleged nondiscriminatory reason for its actions is a pretext for

3   discrimination.

4               ***1. Pay Disparity***

5               Plaintiff alleges that Defendant discriminated against her based on gender by paying her less

6   than its Director of Executive Education, Tony Berti, between January 2005, and June 2005.

7   Specifically, Plaintiff's Complaint alleges that Realty Executives discriminated against her in

8   violation of Title VII and NRS 613.330 by paying Tony Berti a higher salary and higher transaction

9   fee, despite the fact that he had less experience than Smith, and did not have a broker's license.

10  Defendant avers that Plaintiff's claim regarding the pay disparity between herself and Tony Berti

11  fails because she did not bring the claim within 300 days of the alleged discriminatory conduct.  The

12  Court agrees.

13              42 U.S.C. § 2000e-5(e)(1) requires a party to file an EEOC charge within 300 days of the

14  alleged unlawful employment practice.  The 300 day time bar acts as a statute of limitations, thus a

15  claim not brought within the 300 day period cannot be sustained.  See Zipes v. Trans World Airlines,

16  455 U.S. 385, 393–94 (1973).  Here, Plaintiff alleges that beginning in January 2005, she was paid

17  substantially less than Mr. Berti.  (See Complaint at ¶ 33.)  The issue was resolved however, when

18  Plaintiff brought the disparity to Realty Executives owner Jeff Moore's attention.  Mr. Moore

19  admitted surprise at the disparity, and subsequently increased Plaintiff's salary to a rate higher than

20  Tony Berti's.  Plaintiff received the salary increase on July 1, 2005.  Plaintiff's EEOC Charge was

21  filed in February, 2007—more than 300 days after the alleged discriminatory conduct.

22              Plaintiff concedes that her claim for pay disparity under Title VII is time barred, yet argues

23  that her claim remains viable under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and NRS

24  608.017.  Specifically, Plaintiff avers that the applicable limitations period under the EPA is two

25  years.  (Pl.'s Opposition at 23.)

26

9

1       Upon examination of Plaintiff's Complaint, the Court finds that Plaintiff has failed to bring a

2  claim under the EPA.  Her attempt to raise a claim under the EPA by bringing it for the first time in

3  her Opposition to Plaintiff's Motion for Summary Judgment fails.  Plaintiff has conceded that her

4  Complaint fails to bring a claim under the EPA, but argues that because a violation of the EPA was

5  "mentioned in discovery", it should be considered here.  (Pl.'s Opp'n at 24.)  Plaintiff cites

6  Menodiono v. Centinela Hosp. Med. Center, 521 F.3d 1097, 1102–03 (9th Cir, 2008), to argue that

7  federal courts follow the rules of notice pleading, and therefore, because a violation of the EPA was

8  "mentioned in discovery" it is sufficient to have put Defendant on notice that Plaintiff could bring a

9  claim under the EPA.  The Court disagrees.  Here, Plaintiff not only fails to direct the Court to the

10  discovery documents that allegedly put the Court and Defendant on notice of her EPA claim, but

11  Plaintiff has made no attempt to amend her pleadings so as to allege such a claim.

12       Accordingly, the Court finds Plaintiff's EPA claim is improperly raised at this time and

13  therefore fails.

14                 ***2. Disparate Treatment***

15       To state a *prima facie* case of disparate treatment under Title VII, plaintiff must show that (1)

16  she belongs to a protected class, (2) she was performing according to her employer's legitimate

17  expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees

18  outside of her protected class were treated more favorably.  See Bergene v. Salt River Project Agr.

19  Imp. And Power Dist., 272 F.3d 1136, 1140 (9th Cir. 2001);  see also McDonnell Douglas Corp. v.

20  Green, 411 U.S. 792, 802 (1973);  Foss v. Thompson, 242 F.3d 1131, 1134 (9th Cir. 2001).   Once

21  the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate

22  nondiscriminatory reasons for the allegedly discriminatory conduct.  See Sischo-Nownejad v.

23  Merced Community College Dist., 934 F.2d 1104, 1109 (9th Cir. 1991) (superseded by statute on

24  other grounds as recognized in Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027 (9th

25  Cir.2005) (quoting Lowe v. City of Monrovia, 775 F.2d 998, 1009 (9th Cir.1985)).  The employer's

26

articulation of a facially nondiscriminatory reason shifts the burden back to the plaintiff to show that the employer's reason was a pretext for discrimination.  Id.

Defendant avers that Plaintiff has failed to establish that she was performing according to her employer's legitimate expectations, because she violated her employment agreement by listing and selling properties during the course of her employment.  Additionally, Defendant avers that Plaintiff has failed to establish the fourth element required to establish a *prima facie* case of disparate treatment because she cannot prove that other similarly situated employees outside of her protected class were treated more favorably.

### a. Employer's Expectations

Plaintiff's employment agreement states that Smith would "render such other and unrelated service and duties as may be assigned [her]from time to time by Employer, and that she would "perform all of the duties required of and from her pursuant to the express and implicit terms of this agreement, to the reasonable satisfaction of Employer." (Def.'s Mot. for Summ. J. Ex. E.)  Here, the record is replete with evidence that Plaintiff was notified by Defendant that her actions of listing and selling property were believed to be in violation of her employment agreement, yet Plaintiff continued to list and sell property in spite of said admonitions, in direct opposition to her employer's legitimate expectations.

Realty Executives learned that Plaintiff was listing and selling property in August 2006.  Specifically, Plaintiff informed Realty Executives owner Jeff Moore's executive assistant that if Mr. Moore had a problem with her listing and selling activities, then they would  need to have a discussion regarding whether Plaintiff would remain in the position of Corporate Broker.  (Smith Depo. at 223:8–21.)  Shortly thereafter, at a lunch meeting on September 1, 2006, Jeff Moore notified Plaintiff that her activities violated her employment agreement, and that she could not continue to list and sell while she maintained her position as Corporate Broker (See Smith Depo. at 68:22 to 69:9–21; 73:13–22; 78:11–17; Jeff Moore Depo. at 51:5–16.)  Mr. Moore notified Plaintiff

that she needed to decide what she wanted to do because her Agreement prohibited her from listing and selling. (Smith Depo. at 78:11–17.) According to Moore, Plaintiff told him that she would get back to him with her decision. (Id.; Jeff Moore Depo. at 51:17–18.). According to Plaintiff, after her lunch meeting with Mr. Moore on September 1, 2006, she wrote him a letter on September 29, 2006 which outlined her concerns that she was being forced out in order that Realty Executives might project a more youthful image, and about her diminished capacity to earn commissions due to the prohibition of her listing and selling activities. (Pl.'s Opp'n Ex. 10.) Smith argues that this letter was not a refusal to stop listing and selling, but a means of "continu[ing] the dialogue" and "reiterating her request that either she be allowed to continue listing and selling on an occasional basis to supplement her income . . . or Mr. Moore tell her where her contract prohibited her from engaging in this activity" (Pl.'s Opp'n at 9.) A reading of Plaintiff's letter, demonstrates that Moore clearly laid out Realty Executives position that she Smith "cease and desist" selling real estate, as it was a violation of her employment agreement. (See Pl.'s Opp'n Ex. 10.)

Additionally, Moore has testified that the company's policy of having a non-competing broker was discussed virtually once a year in the company's strategic planning meetings, during management meetings, and during recruiting presentations throughout the term of Plaintiff's employment. (Jeff Moore Depo. At 71:3–15.) Specifically, Smith admits that she attended a Strategic Planning Meeting on January 10, 2005, wherein Realty Executives' policy of having a non-competing Corporate Broker was discussed. (See Smith Depo. at 127:14 to 128:4; Fafie Moore Depo. at 66:16–23; Def.'s Mot. for Summ. J. Ex. K.) However, in spite of Moore's admonition, Smith continued to list and sell property. (Smith Depo. at 138:19 to 139:1; 143:8–12, 145:1–4; 146:3–6.) The Court finds Plaintiff's behavior precludes her from establishing a *prima facie* case of disparate treatment, because it establishes that she was not performing her employment responsibilities according to her employer's legitimate expectations.

### b. Similarly Situated Employees Treated More Favorably

Defendant points out that the individual who held the broker position at Realty Executives prior to Plaintiff was Gail McQuarry, a 67 year-old female at the time she resigned from employment. (Jeff Moore Depo at 37:12–21, 38:–3–4, 110:3–11). Ms. McQuarry was allowed to list and sell properties. Defendant claims however, that as the business grew, it implemented the policy of having a non-competing Corporate Broker. (Moore Decl. at ¶ 3.) The individual who replaced Plaintiff as the Corporate Broker upon her termination is Mr. Moore, a male who is two years older than Plaintiff, and who is equally prohibited from listing and selling property.

Plaintiff alleges she has proven a *prima facie* case of gender discrimination because the Corporate Broker who proceeded her was allowed to list and sell whereas she was not. Defendant disclaims Plaintiff's argument, because Mr. Moore, who took over Plaintiff's position as Corporate Broker, is also prohibited from listing and selling property. The Court disagrees, and finds that Plaintiff has sufficiently pled a *prima facie* case of gender discrimination.[1]

The Court finds however, that Defendant has sufficiently articulated a valid nondiscriminatory reason for its policy that Plaintiff was not allowed to list or sell property, and for Plaintiff's ultimate termination. Specifically, Defendant claims that Plaintiff was prohibited from listing and selling property during her employ as the Corporate Broker *inter alia*, to avoid competition between the broker and the agents she oversaw.[2] Additionally, the evidence demonstrates that Plaintiff was aware that Realty Executives management believed her conduct was

---

[1]The Court is not convinced that the prohibition placed upon Mr. Moore during his tenure as the Corporate Broker sufficiently disproves Plaintiff's claim that other similarly situated employees outside of her protected class were treated more favorably, given that Moore is the owner of Realty Executives, was involved in Plaintiff's termination, and was aware of Plaintiff's complaint of disparate treatment.

[2]Defendant provides evidence to suggest that it maintains the policy prohibiting the Corporate Broker from listing and selling property as one of its major recruiting tactics for new agents, and to strengthen the perception of its agents that the Corporate Broker is working for them, and not competing against them. (See Jeff Moore Depo. at 23:2–8; 70:2–8.) Additionally, the Corporate Broker has access to a considerable amount of information related to a sale which could be used to profit personally if the Broker was one of the agents involved in the transaction. (Smith Depo. at 214:9–11.)

1   in violation of her employment agreement.  (See Smith Depo. at 68:22 to 69:9–21; 73:13–22;

2   78:11–17; Jeff Moore Depo. at 51:5–16.)   According to Defendant, Plaintiff was ultimately

3   terminated because she refused to cease listing and selling property after being warned that it was a

4   violation of her employment contract to do so.  (Def.'s Mot. for Summary Judgment Ex. Q.)

5           Having articulated a valid nondiscriminatory reason for its actions, the burden shifts back to

6   Plaintiff to demonstrate that Realty Executives' reason was a pretext for discrimination.  Here,

7   Plaintiff has failed to do so.  Accordingly, Plaintiff's claim for gender discrimination fails, and

8   Defendant's Motion for Summary Judgment is granted as to Plaintiff's fifth cause of action.

9                       **F. Age Discrimination under the ADEA**

10          Plaintiff's sixth cause of action alleges that Defendant discriminated against her because of

11  her age.  Specifically, Plaintiff alleges that she was fired by Realty Executives in order that they

12  might present a more youthful image.

13

14          The substantive provisions of the ADEA are modeled on those of Title VII.   Because of the

15  relationship between the ADEA and Title VII, the substantive standards burdens, and organizations

16  of proof developed under Title VII have been extended to federal claims of age-based discrimination.

17  See Palmer v. United States, 794 F.2d 534, 537 (9th Cir. 1986)  ("The criteria applied to a Title VII

18  discrimination claim also apply to claims arising under the ADEA.").

19          Therefore, to prove discriminatory treatment under the ADEA, the Plaintiff must present

20  evidence that gives rise to an inference of unlawful discrimination.  See Tex. Dept. of Cmty. Affairs

21  v. Burdine, 450 U.S. 248, 253 (1981).  "That is, the plaintiff's age must have actually played a role in

22  the employer's decision making process and had a determinative influence on the outcome."  Reeves

23  v. Sanderson Plumbing Prods., Inc., 530 U.S. 133,141 (2000).  Plaintiff has the burden of proving

24  that the disparate treatment was the result of intentional discrimination based on her protected

25  characteristics.  EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1314 (10th Cir. 1992).

26

                                        14

29 U.S.C. § 623(a) states in relevant part, "It shall be unlawful for an employer . . . to fail or refuse to hire . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . ."  To establish a *prima facie* case of an ADEA violation, Plaintiff must show that she (1) was a member of a protected class [age 40–70]; (2) was performing her job in a satisfactory manner; (3) was rejected for employment or otherwise subjected to an adverse employment action; and (4) was replaced by a substantially younger employee with equal or inferior qualifications.  See Wallis v. J.R. Simplot Co., 26 F.3d 885, 891 (9th Cir. 1994).   Defendant argues that Plaintiff has failed to establish the second and fourth elements required to establish a *prima facie* case of age discrimination.

As in Title VII cases, once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate nondiscriminatory reasons for the allegedly discriminatory conduct.  See Sischo-Nownejad, 934 F.2d at 1109.   The employer's articulation of a facially nondiscriminatory reason shifts the burden back to the plaintiff to show that the employer's reason was a pretext for discrimination.  Id.  The plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Godwin v. Hunt Wesson, Inc., 150 F.3d 1217 (9th Cir 1998) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).

### 1. Satisfactory Job Performance

Defendant argues that Plaintiff has failed to establish the second element required to establish a *prima facie* case of age discrimination.  Specifically, Defendant avers that Smith cannot show that she was performing her job in a satisfactory manner because she violated the employment agreement by listing and selling properties during the course of her employment, and further, that Plaintiff continued to do so after being warned by Mr. Moore that Realty Executives management believed her actions were contrary to her employment agreement.

1      Here, the Court agrees that Plaintiff cannot establish that she was performing her job in a

2  satisfactory manner.  Plaintiff spends the majority of her Opposition arguing that Mr. Moore made

3  discriminatory comments that are sufficient to demonstrate pretext.  These arguments (whether

4  persuasive or not) however, cannot overcome the fact that Plaintiff acted against her employer's will

5  by continuing to list and sell property, even after she had been asked not to.

6      It is not disputed that Plaintiff was warned that she should not list and sell property while

7  employed as the Corporate Broker.  Specifically, Plaintiff met with Mr. Moore on September 1,

8  2006, and has testified that at that meeting she was told that the Realty Executives management

9  believed her actions of listing and selling property while employed as the Corporate Broker violated

10  her employment agreement.  (Smith Depo. at 68:22 to 69:8–15; 69:16–21; 73:13–22;  Jeff Moore

11  Depo. at 51:5–16.)  While Plaintiff argues that she was discriminated against by being the only

12  employee prohibited from listing and selling property, the Court finds that Defendant has proffered a

13  valid nondiscriminatory reason for prohibiting Plaintiff from listing and selling property.

14      Additionally, Plaintiff argues that Defendant's stated reason for her termination is suspect,

15  because Defendant waited four and one-half months after finding out that she was listing and selling

16  property before firing her.  The Court is not persuaded by this argument, especially, because Plaintiff

17  continued to list and sell property during the four and one-half month period.

18                    *2. Replaced by Substantially Younger Employee*

19      Defendant further avers that Plaintiff cannot establish the fourth element of a *prima facie* case

20  of discrimination under the ADA because she cannot demonstrate that she was replaced by a

21  substantially younger employee with equal or inferior qualifications.  Plaintiff alleges that upon her

22  termination, her position was filled by Tony Berti, a younger male, who had less experience and was

23  less qualified than Plaintiff.  Defendant however, provides evidence that the individual who has

24  replaced Plaintiff as the Corporate Broker is not Tony Berti, but Mr. Moore, who is two years older

25  than Plaintiff.  Additionally, prior to Mr. Moore taking over as Corporate Broker, Realty Executives

26  interviewed Bruce Allit and Steve Kitnick, both of whom are in their 60's and older than Plaintiff,

1   and have a great deal of experience and qualifications.  The position was eventually offered to Mr.

2   Allit, but Allit declined the offer.  (Jeff Moore Depo. At 15:17–21.)  Subsequently, due to the

3   downturn of real estate market conditions, Realty Executives decided that Mr. Moore would continue

4   to handle the Corporate Broker duties.  (Fafie Moore Depo. at 100:1–6.)

5          "An inference of discrimination can be established by showing the employer had a continuing

6   need for the employees' skills and services in that their various duties were still being performed or

7   by showing that others not in their protected class were treated more favorably."  (See Pl.'s Opp. at

8   28 (citing Diaz v. Eagle Produce, Ltd., 521 F.3d 1201, 1208 (9th Cir. 2008)).  Plaintiff alleges that an

9   inference of discrimination is established by the promotion of Mr. Berti to General Manager upon her

10  termination.  Specifically, although Berti was not made the Corporate Broker, Plaintiff alleges he

11  "wholly assumed" her duties.  Defendant, in opposition, provides evidence that rebuts Plaintiff's

12  allegations that Mr. Berti, replaced her. (Pl.'s Opp'n at 13.)

13         Specifically, Berti cannot hold the position of Corporate Broker because he is not an officer

14  of the company, and does not hold a broker's license.  (Jeff Moore Depo. At 93:22–23.)

15  Additionally, Berti has testified that he did not take over Plaintiff's responsibility for reviewing files,

16  and has only recently been receiving training to do so from Mr. Moore.  Additionally, Berti has

17  testified that he was not given the responsibility of representing Realty Executives at hearings before

18  the Greater Las Vegas Association of Realtors ("GLVAR").[3]  Defendant also provides testimony that

19  upon assuming the position of General Manager, Berti "began to share responsibility for answering

20  agents' questions with at least five other individuals."  (Def.'s Reply at 17.)

21         The Court finds that Plaintiff has failed to demonstrate that she was replaced by a

22  substantially younger employee with equal or inferior qualifications, and therefore, for this reason

23  too, has failed to establish a *prima facie* case of discrimination under the ADEA.  Accordingly,

24  Plaintiff's Motion for Summary Judgment is granted as to Plaintiff's sixth claim for relief.

25  _____

26  [3]While Berti admits to having attended two hearings before the GLVAR, he claims he did so only to learn the business in order to better perform his duties as General Manager.

17

**G. Attorney's Fees pursuant to Title VII and the ADEA.**

Plaintiff's seventh claim for relief seeks attorney's fees pursuant to Title VII and the ADEA. Specifically, Plaintiff seeks attorney's fees pursuant to 42 U.S.C. § 2000e-5(k) that were incurred prosecuting her gender discrimination claim. Likewise, Plaintiff seeks attorney's fees pursuant to 29 U.S.C. § 626(b) for fees incurred prosecuting her age discrimination claim.

Here, the Court finds that Plaintiff has failed to establish a *prima facie* case for both her Title VII and ADEA claims. Therefore, as Summary Judgment for both claims has been granted, the Plaintiff's claim for attorney's fees under either both Title VII (or the EPA) and the ADEA is moot.

**IV. Conclusion**

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (#21) is **DENIED** as to Plaintiff's first, second, and third claims for relief.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (#21) is **GRANTED** as to Plaintiff's fourth, fifth, sixth, and seventh claims for relief.

DATED this 16th day of March 2009.

_____
Kent J. Dawson
United States District Judge